## In re NARGANES.

(Supreme Court, Appellate Division, First Department.   April 3, 1914.)

1. CONTRACTS (§ 45*)—DELIVERY—EVIDENCE.

The possession by an executor of an instrument, two years after he became executor, signed by testator, and which acknowledged testator's indebtedness to the executor in a certain sum, was not evidence that testator had ever delivered the instrument to the executor, and hence it could not be made the basis of a contract between testator and the executor, which would support a claim against the estate.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 169, 191, 205, 213, 214; Dec. Dig. § 45.*]

2. ACCOUNT STATED (§ 4*)—RECITAL OF INDEBTEDNESS.

An instrument reciting that the signer acknowledges himself to be indebted to the person named therein in a certain sum, which amount the signer promised to pay from the proceeds to be obtained from properties in the signer's name in a certain parish, is not enforceable as an account stated.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 14, 15; Dec. Dig. § 4.*]

3. EVIDENCE (§ 215*)—ADMISSIONS.

An instrument in an executor's possession, signed by testator and acknowledging an indebtedness to the executor in a certain sum, which testator therein agrees to pay from the proceeds of certain properties, may be used by the executor as an admission by testator that he had received the sum stated from the executor, even though it cannot be made the basis of a contract between them for want of a showing of delivery.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 754–759; Dec. Dig. § 215.*]

4. CONTRACTS (§§ 15, 42*)—EXECUTION—DELIVERY.

A written statement that the signer of a paper intended to pay a certain sum out of the proceeds of certain land was not a binding contract if it was not delivered to the payee named therein and assented to by him.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 61–66, 207–214; Dec. Dig. §§ 15, 42.*]

Appeal from Surrogate's Court, New York County.

Petition by Ricardo Narganes for the establishment of a claim in his favor against the estate of Cristobal N. Madan, deceased, of which petitioner is executor. From a decree of the surrogate disallowing the claim, claimant appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Carroll G. Walter, of New York City, for appellant.

Linsly Johnson, of New York City, for respondent.

INGRAHAM, P. J.   The testator died in the island of Cuba on the 12th day of January, 1904, a resident of the state of New York, leaving a last will and testament which was duly admitted to probate on March 13, 1911, and by which he appointed the petitioner his executor, and on the 4th of May, 1911, letters testamentary were issued to the petitioner.   On June 13, 1911, the executor, Ricardo Narganes, instituted a proceeding, under section 2719 of the Code of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Civil Procedure, to recover from the estate of his testator a claim amounting to $3,330 and interest. To prove this claim the petitioner presented an instrument which was proved to be in the handwriting of the testator and was dated June 2, 1897. That instrument admitted a loan by the petitioner to the testator on July 15, 1895, of $1,060, cash for letter of credit, $300, cash loaned on March 24th, $40, check for payment in Louisiana, $250, and interest on these amounts at 10 per cent. and this account was followed by this statement:

"I acknowledge to be indebted to Mr. Ricardo Narganes in the sum of one thousand nine hundred and twenty-two dollars which amount I promise to pay him from the proceeds to be obtained from the properties which appear to be in my name in the parish of Livingston, state of La.

"New York, June 2, 1897.

"[Signed]　　　　　　　　　　　　　　　　Cristobal N. Madan."

The only evidence as to the custody of this instrument appears in the testimony of the petitioner's attorney. He testified that he received this instrument from the petitioner personally in February or March, 1913.

[1] The petitioner being the executor of the testator, his possession of the instrument two years after the letters were issued to him was not evidence that the petitioner had the instrument in his possession prior to the date of the death of the testator, or that the testator had ever delivered it to him, so that it could be the basis of a contract between the testator and the petitioner.

[2] The surrogate was clearly right in the conclusion that this instrument could not be enforced as an account stated, or as a promise to pay a sum of money named by the testator to the petitioner. From all that appears, the petitioner might have found this paper among the papers of the testator after letters testamentary were issued to him. The fact that such an instrument was found with the testator's papers after his death would negative the claim that there was any promise or agreement by the testator to pay any sum of money to the petitioner. Nor was there any evidence that the sum of money which the testator there acknowledged himself indebted to the petitioner had not been paid.

[3] The plaintiff claims, however, that it can be used as an admission made by the testator in his own handwriting that the petitioner had advanced to the testator the various sums therein specified on the dates named, and I am inclined to think that it had probative force as such an admission, and therefore there was evidence before the surrogate, which was uncontradicted, that the petitioner had advanced to the testator the various sums therein specified. The instrument, however, is dated June 2, 1897, and the testator died January 12, 1904. Six years had therefore elapsed between the date of the admission and the date of the testator's death, and the claim was barred by the statute of limitations, unless there was an enforceable promise to pay from the proceeds to be obtained from the properties in the state of Louisiana; but, if this instrument cannot be used as evidence of a promise because of the lack of evidence of its delivery to the petitioner, this provision as to the payment cannot have the

effect of extending the period of the statute of limitations. The evidence is that the property of the testator in Louisiana was sold in the year 1900. If this was a promise by the testator to pay this sum of money which he then admitted was due to the petitioner, it would then become payable; but there is no evidence to show that it was not paid at that time.

[4] The fact that the testator had written that he intended to make that payment out of the proceeds of the land in Louisiana did not make it a binding contract between himself and the petitioner, unless it was delivered to the payee and he had assented to it. So, as the mere production of the instrument by the petitioner, who is also executor of the estate, was no evidence of the delivery of the instrument, or that it ever became a contract, and as the admission of the receipt of the money could only be used as an admission that the testator had received from the plaintiff various sums of money named prior to June 1, 1907, it seems to me that the claim was barred by the statute of limitations, and the surrogate was right in disallowing the claim. The ninth finding, however, was not sustained by the evidence, and it is reversed.

The decree should be affirmed, with costs.

CLARKE, SCOTT, and DOWLING, JJ., concur.

HOTCHKISS, J. (concurring). The decree appealed from expunged the claim filed by the executor against the estate. Several questions have been argued, but the sole question of importance is whether the evidence was sufficient prima facie to prove that a debt existed. The only evidence of indebtedness was a writing, the body of and signature to which was in the handwriting of the deceased. This instrument is headed "Cristobal N. Madan to R. Narganes," following which were three items of cash loaned, with interest, and one item "to check for payment of taxes in La." To this was added an acknowledgment of indebtedness for the aggregate of the several items preceding, and a promise to pay the same from the proceeds of certain lands when sold, which lands were thereafter sold by the deceased. No evidence whatever was offered to show that any loans had in fact been made by check or otherwise, nor did it appear when or how the executor became possessed of the writing. The executor rested his case on proof of the handwriting of the deceased and on the presumption which he claimed arose from his possession of the writing, which he produced and put in evidence. No evidence was offered on behalf of the estate.

I think the claim was properly rejected. The cases in which the question now flatly presented has been considered are not decisive, because in each there was some evidence of extrinsic facts bearing upon the question of delivery, but the language of the courts affords support to a conclusion adverse to the sufficiency of the evidence to prove a debt in the present case. In Matter of Humfreyville, 6 App. Div. 535, 39 N. Y. Supp. 550; Cowee v. Cornell, 75 N. Y. 91, 31 Am. Rep. 428; Appeal of McMahon, 132 Pa. 175, 19 Atl. 68; Gamble

v. Gamble, 11 Ala. 966; Elliott v. Elliott, 21 N. C. 57, 65. On principle I think no other result can be reached. Delivery is a question of fact and commonly one of intent, and, like all similar questions, may be presumed from the existence of other facts from which the principal fact is naturally, if not necessarily, to be inferred. Justice v. Lang, 52 N. Y. 323, 329. But as was said in U. S. v. Ross, 92 U. S. 281, 283 (23 L. Ed. 707):

"No inference of fact or of law is reliable drawn from premises which are uncertain."

. This is the reason for the rule that an inference may not be based upon an inference. People v. Razezicz, 206 N. Y. 249, 269, 270, 99 N. E. 557. The presumption of delivery which arises from possession is based on the inference that the obligor has parted with his obligation, for otherwise it would not be in the hands of an adverse holder. Possession alone, without explanation, while evidence of ownership, has been said to be the "lowest species of evidence"; and "if the custody and possession is shown to be equally consistent with an outstanding ownership in a third person, as with a title in the one having possession, no presumption of ownership arises solely from such possession." Rawley v. Brown, 71 N. Y. 85, 89. Where the situation is, as here, such that possession may have been obtained by the obligee without any act of delivery by the obligor and wholly by reason of the opportunity afforded by the trust relation in which the obligee stood toward the obligor, giving him access to the papers of the latter, with the right and duty to possess himself thereof, I think any presumption based on a theory of adverse possession must fail. The authorities are numerous that, until delivery, one who executes a deed or obligation has a locus poenitentiæ. Furthermore, if the debt has been paid by the obligor, it would be natural to find in his possession the instrument by which it was evidenced. The situation, therefore, presents two circumstances (nondelivery and payment) under which it would have been quite natural for the deceased to have had possession of the paper at the time of his death, and in either event possession would have passed to the executor by virtue of his office. That any presumption of delivery or of indebtedness should not be taken to arise under such circumstances is further supported by the rule which requires a claimant, in the situation of this executor, to support his claim by proof of the most satisfactory character. Matter of Humfreyville; Elliott v. Elliott, supra. It is argued that the defense of payment was not pleaded, and hence is not open to the respondent. The answer is plain. The burden was on the executor to establish a debt, and this he failed to do. Evidence under a plea of payment becomes relevant only where a debt has first been shown to exist.

The decree should be affirmed, with costs.