In the Matter of the Accounting of TERESA E. LESSORD, as Executrix of BERNARD H. STEWART, Deceased.

Surrogate's Court, Monroe County, December 8, 1950.

*Joseph McSweeney* and *Robert H. Wendt* for executrix, petitioner.

*Frederick I. Stokes* and *C. Kent Williams* for Verona Perrin, as administratrix of the estate of Matilda Huyck, deceased, claimant.

WITMER, S. In this judicial settlement proceeding trial has been had of the claim of Verona Perrin, as administratrix of the estate of Matilda Huyck, deceased, for the sum of $3,350

for services rendered by the latter to testator during the period from May 1, 1930, to October 7, 1936. For ease of reference said Matilda Huyck, deceased, will be referred to herein as the claimant.

It appears that testator and his wife separated prior to the year 1930. Testator had an arthritic condition which crippled him to some extent. He lived alone, doing his own housework and tending to a cabin rental and picnic area business which was later expanded into a gasoline station and restaurant business. In the spring of 1930 claimant began to render some services to testator, consisting of housework in his home and in the maintenance of his cabins, and some personal nursing services. Testator kept a ledger of his expenditures, and from time to time an entry is found herein of a small cash payment made to claimant for services rendered. It appears that the testator generally paid his bills promptly. During the entire period covered by the claim, claimant was frequently working for herself or other persons away from testator's premises, sometimes for extended periods, and this was particularly true in 1935 and thereafter when claimant began doing a great deal of practical nursing away from testator's premises. Nevertheless, on June 26, 1936, testator signed and delivered to claimant an instrument upon which claimant now relies, which reads as follows:

" I, BERNARD H. STEWART, of Scottsville Road, Scottsville, New York, hereby acknowledge that MATILDA HUYCK, of Rochester, Monroe County, New York, has nursed and cared for me and served me at my request continously [sic] since May 1st, 1930 at an agreed renumeration [sic] of Ten Dollars ($10.00) per week and that no part of said renumeration [sic] has been paid.

" I therefore direct that my Executor or Administrator shall, upon the judicial settlement of my estate, pay to the said Matilda Huyck, the sum of Ten Dollars ($10.00) per week from May 1st, 1930 to the date of my death.

" I hereby acknowledge the above to be a just and reasonable claim against my estate.

" Dated: June 26, 1936.

*Bernard H. Stewart*

" Witness
" *Nelson S. Boehl* "

At about the time of the execution of the above instrument claimant's son, Norman Huyck, and Anna Huyck assumed the operation of testator's gasoline station. They lived over the

restaurant, and claimant lived with them. She continued performing services for testator from time to time as before, and also continued to work as a practical nurse for others away from testator's premises. On October 7, 1936, there appears to have been a falling out between testator and claimant, and she and Norman Huyck moved away from his premises permanently. Thereafter, she admittedly performed no further services for testator. She died in 1944; and testator died in November, 1948.

Claimant's counsel states that although his client has an apparent claim for $10 per week from May 1, 1930, to the date of testator's death, the instrument was signed in expectation of claimant's services continuing thereafter, and that claimant waives any claim for the period after she left testator. The claim, therefore, is made for 335 weeks at $10 per week.

The executrix contends that the claim or cause of action rests upon the actual services rendered, if any, and not upon the quoted instrument; that it is not enough for claimant to prove *some* consideration for testator's agreement, but she must prove the consideration, to wit, the services in detail and their reasonable value; and that the claimant has failed to present adequate proof to support a finding against this estate. The executrix also pleads the Statute of Limitations.

The instrument relied upon by claimant consists of only three sentences. In the first sentence testator acknowledged that claimant had rendered nursing and other services for him since May 1, 1930, at his request at the agreed rate of $10 per week, and that the obligation remained unpaid. He does not in that sentence expressly agree to pay the obligation, and if there were nothing more in the instrument, it might be that it would not constitute an agreement to pay so as to remove the defense of the Statute of Limitations in any respect. (*Lawrence* v. *Harrington*, 122 N. Y. 408, 413 *et seq; Crandall* v. *Moston*, 24 App. Div. 547; 1 Williston on Contracts [Rev. ed.], §§ 158, 166.) But testator did not stop there, and in the second sentence he " therefore " directed his executor upon the judicial settlement of his estate to pay claimant the sum of $10 per week from May 1, 1930, to testator's death. Admittedly, this sentence is a *non sequitur* in part. It does amount, in effect, to a promise to pay at death. Such a promise, if otherwise proper, is binding upon the promisor, removes the bar of the Statute of Limitations as to services theretofore rendered and outlawed, and suspends the running of the Statute of Limitations henceforth until the death of the promisor. (*Carnwright* v. *Gray*,

127 N. Y. 92; *Matter of Narganes,* 161 App. Div. 563, affd. 213 N. Y. 659; *Yarwood v. Trusts & Guar. Co.,* 94 App. Div. 47, appeal dismissed 182 N. Y. 527; *Matter of Whiteman,* 268 App. Div. 591; *Matter of Simmons,* 48 Misc. 484; Restatement, Contracts, § 91.) The difficulty with this promise is that it directs testator's executor to pay $10 per week not only from May 1, 1930, to its date, but also for each week thereafter until testator's death. The third sentence merely confirms the implication of the first two sentences that testator promised to pay $10 per week for services rendered and to be rendered.

The executrix contends that the second sentence reduces the instrument to an invalid attempt to make a testamentary disposition of testator's property, the instrument not having been executed as required for a will. It seems inherent in the instrument that the testator expected claimant's services to continue until his death, and that payment should be made to claimant for services after the date of the instrument only so long as she continued to serve him substantially as theretofore, and that no gift, that is, payment without services rendered, was contemplated. That is the interpretation of the instrument made by claimant in demanding payment only to October 7, 1936, when she terminated her services to testator, and such interpretation is adopted by the court. There is nothing in the instrument to warrant the conclusion that it would become void if claimant should terminate her services to testator for any reason prior to his death. The New York cases hold that where such an instrument is supported by consideration, it is not testamentary in character, and is binding at death. (*Matter of Whiteman,* 268 App. Div. 591, *supra,* and other cases cited therewith *supra,* and see collection of New York cases on this subject in 1 A. L. R., 2d, § 8, p. 1197 *et seq.*)

The cause of action is based upon the new promise evidenced by said instrument, the services rendered before and after its date being merely the consideration for the new promise. (*Herrington v. Davitt,* 220 N. Y. 162, 165–166; *Taylor v. Hotchkiss,* 81 App. Div. 470, 474, affd. 179 N. Y. 546; *Dusenbury v. Hoyt,* 53 N. Y. 521; *Scheper v. Briggs,* 28 App. Div. 115; Restatement, Contracts, § 86; 1 Williston on Contracts [Rev. ed.], § 196; and cf. *Matter of Narganes,* 161 App. Div. 563, affd. 213 N. Y. 659, *supra,* where claimant was relegated to the original obligation because there was insufficient proof of delivery of the new promise.)

The fact that the instrument does not bear interest does not affect its validity; but since that fact reduces the apparent

value of the promise, it tends to justify the face amount thereof, which in some cases might otherwise seem excessive. (*Matter of Taylor,* 251 N. Y. 257; *Yarwood* v. *Trusts & Guar. Co.,* 94 App. Div. 47, 52, *supra; Matter of Whiteman,* 268 App. Div. 591, *supra.*)

The executrix has a duty to resist payment of any moral obligation unaccompanied by legal responsibility (*Matter of Taylor,* 251 N. Y. 257, *supra*), and must be satisfied that the claim puts the estate under legal obligation to make payment. The burden of proof, of course, is upon claimant. (*Matter of Spinner,* 264 App. Div. 114.)

The only question before the court is whether or not there was any consideration to support the instrument sued upon. If there was some consideration, that is sufficient to sustain the claim. We are not concerned with the wisdom of the bargain. Testator was of full age and competent. He knew what he had received and was to receive, and he was entitled, in the absence of objection from claimant, to fix his own value upon it — the thing bargained for. (*Yarwood* v. *Trusts & Guar. Co.,* 94 App. Div. 47, 52, appeal dismissed 182 N. Y. 527, *supra; Miller* v. *McKenzie,* 95 N. Y. 575, 582; *Worth* v. *Case,* 42 N. Y. 362; *Root* v. *Strang,* 77 Hun 14; *Matter of Dashnau,* 194 Misc. 156, 159; *Matter of Dreier,* 187 Misc. 244; *Matter of Todd,* 47 Misc. 35.) In the *Yarwood* case (*supra*), at page 52, the court said: " It would be difficult for the court to measure the pecuniary value of the benefits which he acknowledged that he had derived from the efforts of these young people. He had the right for himself to measure and fix their value and pay accordingly. It is well settled that courts will not overturn an obligation of this kind because they may think that the promisor has paid too liberal a price for what he received. It is not necessary that the consideration of a note shall be equal in pecuniary value to the face of the obligation given. If no part of the consideration was wanting at the time, and no part of it subsequently failed, although inadequate in amount, the note is a valid obligation.''

And in *Miller* v. *McKenzie* (*supra*), in reversing the courts below, the court at page 582 stated the true rule as follows: " if this note was given by the intestate for services which the plaintiff had rendered to him, and for services which she should render to him, and which she subsequently did render to him, in reliance upon his promise, then she was entitled to recover the full amount of the note, although that was much greater than the real value of the services '',

It is said that past consideration is no consideration (1 Williston on Contracts [Rev. ed.], § 142), but this doctrine does not apply where there is an equitable obligation barred only by the Statute of Limitations. (*Pershall* v. *Elliott,* 249 N. Y. 183, 188; 1 Williston on Contracts [Rev. ed.], §§ 143–146.) Nor is it necessary in this case that there be any further proof of acceptance by claimant of testator's new promise. (1 Williston on Contracts, § 180.) It is also recognized that generally speaking services which have been rendered as a gratuity and without expectation of pay do not constitute sufficient consideration to support an executory promise (*Whitaker* v. *Whitaker,* 52 N. Y. 368; *Matter of Strevell* v. *Estate of Jones,* 106 App. Div. 334; *Blanshan* v. *Russell,* 32 App. Div. 103; *Matter of Dashnau,* 194 Misc. 156, 159, *supra*); but the rule has not always been followed in cases such as the one at bar. (*Root* v. *Strang,* 77 Hun. 14, *supra*.)

The evidence of the nature of claimant's services to testator is meager and not very satisfactory. It appears, however, that claimant did perform services for testator; she was unrelated to him; and, although there is evidence tending to show that testator paid in general for services as rendered, the instrument sued upon constitutes an admission by testator that he had not paid for the prior services in question and was liable therefor. Moreover, the question of consideration is clearly answered in favor of claimant by the fact that after the execution of the instrument sued upon, claimant continued to serve the testator as before until October 7, 1936; and this evidently was in reliance upon said instrument. Testator got what he bargained for during the period in question; and, as held in the cases cited above in this connection, it is not for this court to question the wisdom of his agreement. The claim for $3,350 is, therefore, allowed in full.

Submit decree accordingly.